United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Securities and Exchange Commission, Plaintiff<br>v.<br>PV Enterprises, Inc., and others, Defendants. | )<br>)<br>)<br>)  Civil Action No. 16-20542-Civ-Scola<br>) |

### Default Judgment Against Defendant PV Enterprises, Inc.

      The Securities and Exchange Commission filed its Complaint against Defendant PV Enterprises, Inc. ("PVEC") on February 16, 2016. The SEC served defendant PVEC on its registered agent, and entity's answer or responsive pleading was due March 21, 2016. PVEC failed to file an answer or responsive pleading. The SEC moved for entry of default against PVEC, and the Clerk granted the entry of default against the defendant on April 8, 2016. The SEC has now filed a renewed motion for default judgment against PVEC.

      "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," as set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Almeira v. GB House, LLC*, No. 14–cv–00045, 2014 WL 1366808, at *1 (M.D. Fla. Apr. 7, 2014) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)). An evidentiary hearing on damages is unnecessary as long as "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *see also S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005).

      The Court hereby **grants** the SEC's renewed motion (ECF No. 58) and has set forth relevant findings of fact and conclusions of law below, in addition to injunctive relief, and the imposition of disgorgement, prejudgment interest, a civil penalty, as appropriate.

## FINDINGS AND CONCLUSIONS

The Declaration of Matthew F. McNamara, provided by the Commission establishes that from the Commission's investigation, disgorgement and prejudgment interest in specific amounts are appropriate based upon the knowledge of the declarant (McNamara Declaration, ¶4-6). Given the failure of defendant PVEC to answer or otherwise defend the allegations against it, the following allegations of the SEC's Complaint are now deemed to be true (as to PVEC only) and are made the findings of this Court:

1. The Commission brought this action against PVEC and Panagiotis (Peter) Villiotis ("Villiotis") for violations of the registration and antifraud provisions of the federal securities laws. (¶1, Complaint).

2. PVEC entered into business transactions with a specific financing company ("Financing Company") which resulted in the companies issuing millions of shares of the company's stock to the Financing Company in violation of the registration provisions of the federal securities laws. (¶3, Complaint).

3. Section 5 of the Securities Act of 1933 ("Securities Act") prohibits the sale of securities unless the securities are registered with the Commission or are exempt from registration. (¶4, Complaint).

4. The stock that PVEC sold to the Financing Company was not registered with the Commission; rather, the company attempted to rely on an exemption found in Section 3(a)(10) of the Securities Act. In relevant part, Section 3(a)(10) exempts securities issued in court-approved exchanges for "bona fide outstanding securities, claims, or property interests." (¶5, Complaint).

5. To avoid registration, PVEC sold outstanding debt liabilities to Financing Company; the Financing Company then sued PVEC in a Florida state court for defaulting on its obligations, and the parties settled the action by requesting the state court allow PVEC to pay the creditor in company shares that would be exempt from registration pursuant to Section 3(a)(10). (¶6, Complaint).

6. In seeking the Florida state court's approval, PVEC made material misstatements and withheld significant information, thereby rendering the Section 3(a)(10) exemption unavailable for any related stock issuances to the Financing Company. (¶7, Complaint).

7. In pursuit of receiving settlement approval from the court to issue shares to the Financing Company, PVEC lied to the Florida state court by

misrepresenting that the underlying claims sold to the Financing Company were bona fide, when, in fact, the claims were fabricated by PVEC. PVEC also represented that none of the money received by its purported creditors would be kicked back to PVEC, when, in fact, a majority of the money received by the purported creditors was kicked back to PVEC and Villiotis. (¶8, Complaint).

8. The omissions and misrepresentations by PVEC rendered the Section 3(a)(10) exemption unavailable for the related stock issuances to the Financing Company and, as a result, the unregistered distributions of those securities to the Financing Company violated Section 5 of the Securities Act. (¶10, Complaint).

9. PVEC also violated the anti-fraud provisions of the securities laws in making the material misstatements and omissions concerning the bona fide nature of the claims and the kickbacks in connection with the sales of securities to the Financing Company. In addition, PVEC and Villiotis omitted material information and made material misstatements in press releases concerning and relating to the purported Section 3(a)(10) settlements. (¶11, Complaint).

10. As a result of the conduct described in this Complaint, PVEC violated Sections 5(a) and (c), and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c), 77q(a)(1), 77q(a)(2), 77q(a)(3); and Sections 10(b), 15(a) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), 15 U.S.C. § 78o(a) and 117 C.F.R. § 240.10b-5. (¶12, Complaint).

11. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 20(e), 20(g), and 2(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), 77t(e), 77t(g), and 77v(a); and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 20(e), 20(g), and 2(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), 77t(e), 77t(g), and 77v(a); and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa. (¶14, Complaint).

12. This Court has personal jurisdiction and venue is proper in the S.D.Florida because many of the Defendants' acts constituting violations of the Securities Act and the Exchange Act occurred in the district. The Defendants offered and sold unregistered securities to the Miami based Financing Company, and money received by each of the Defendants, in the form of either direct payments from the Financing Company or kickbacks from the creditors, originated from the Financing Company in Miami Beach. Villiotis resides in the

S.D. Florida, and PVEC, Villiotis, and the Financing Company conduct business from the S.D. Florida. (¶15, Complaint).

13. In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails. (¶16, Complaint).

14. **PVEC**, at all times relevant, was a Nevada corporation with its principal place of business in Fort Lauderdale, Florida. PVEC was an international shipping and travel company and was not registered with the Commission. According to an April 29, 2015 press release, PVEC changed its name to Drone Services USA, Inc. (¶17, Complaint).

15. **Villiotis** is a resident of Hallandale Beach, Florida. Villiotis was the founder of PVEC and at all times relevant was President and CEO of PVEC. According to a 4/29/2015 press release, Villiotis resigned as CEO and President of PVEC. (¶18, Complaint).

16. **Financing Company**, a Nevada limited liability company with its principal place of business in Miami Beach, Florida, holds itself out as a financial services company. Since June 2013, Financing Company's business involves making investments for its own account through settlement transactions with microcap stock companies in purported reliance on the registration exemption contained in Section 3(a)(10) of the Securities Act. (¶23, Complaint).

### A. PVEC'S Issuance of Unregistered Shares

17. At all times relevant, PVEC was a Fort Lauderdale, Florida shipping and travel company whose common stock was publicly traded on an "over the counter" market (aka the "pink sheets") under the symbol PVEC. (¶24, Complaint). At all times relevant, Villiotis was the President and CEO of PVEC. (¶25, Complaint).

18. In November 2013, December 2013, and February 2014, PVEC, under the direction of Villiotis, entered into agreements with a Financing Company pursuant to which PVEC would issue shares of its common stock to the Financing Company in purported reliance on a registration exemption found in Section 3(a)(10) of the Securities Act. (¶26, Complaint).

19. Section 3(a)(10) of the Securities Act exempts from registration securities issued in court-approved exchanges for "bona fide outstanding securities, claims or property interests." (¶27, Complaint).

20. Pursuant to the agreements, the Financing Company purchased outstanding liabilities owed by PVEC to various creditors. The Financing Company executed a Claim Purchase Agreement with each creditor in which the Financing Company acquired immediate assignment of the rights, title, and interest of the creditor in exchange for a future payment. (¶28, Complaint).

21. After acquiring the past due liabilities from the creditors, and as agreed beforehand by PVEC and the Financing Company, the Financing Company filed complaints against PVEC in Sarasota County alleging that PVEC defaulted on its obligations to the creditors and that PVEC is responsible and liable for the debts acquired by the Financing Company. (¶29, Complaint).

22. As stated in a state court complaint filed in December 2013, the Financing Company purchased and acquired the debt of PVEC in the amount of $20,809.53 owed by PVEC to M&A International & Investments LLC ("M&A") and the debt of PVEC in the amount of $99.563.50 owed by PVEC to Vision Investments Enterprise Group, Inc. ("Vision"). (¶30, Complaint). As stated in a state court complaint filed in February 2014, the Financing Company purchased and acquired the debt of PVEC in the amount of $52,680.74 owed by PVEC to Alpha Vision Enterprises, Ltd. ("Alpha"). (¶31, Complaint). Each of the complaints filed with the state court attached purported copies of the invoices evidencing the outstanding debts owed by PVEC to the creditors. (¶32, Complaint).

23. Simultaneous to the filing of the state court complaints, PVEC and the Financing Company submitted proposed settlement agreements to the court. The proposed settlement agreements stipulated that PVEC would issue the Financing Company current and future shares of its common stock as a substitute for repayment of the past due liabilities owed by PVEC to the Financing Company. (¶33, Complaint).

24. Each of the proposed settlement agreements notified the court of the parties' reliance on Section 3(a)(10) of the Securities Act and specifically referenced that Section 3(a)(10) exempts from registration securities issued in court-approved exchanges for "**bona fide** outstanding securities, claims, or property interests." (emphasis added). (¶34, Complaint).

25. Each of the proposed settlement agreements in state court stipulated the following:

> a. "[Creditor] is not, directly or indirectly, utilizing any of the proceeds received from [the Financing Company] for selling the Claims to provide any consideration to or invest in any manner in the [PVEC] or any affiliate of the [PVEC]."

  b. "[PVEC] represents that each Claim being purchased pursuant hereto is a bona-fide Claim against the Company and that the invoices or written contract(s)/promissory notes underlying each Claim are accurate representations of the nature of the debt and the amounts owed by [PVEC] to [Creditor]." (¶35, Complaint).

26. Each of the proposed settlements was approved by the state court, after which PVEC began issuing shares of its common stock to the financing pursuant to the settlement agreements. (¶36, Complaint).

27. In connection with the November 2013 settlement, PVEC issued more than 259 million shares of its common stock to the Financing Company over the course of one month. At the time of entering into the November 2013 settlement agreement, PVEC had 1.58 billion shares of common stock outstanding. Therefore, over the course of one month, PVEC's common stock outstanding increased by over 259 million, representing dilution of more than 15%. (¶37, Complaint).

28. In connection with the December 2013 settlement, PVEC issued more than 2.28 billion shares of its common stock to the Financing Company, which diluted PVEC's common stock by more than 88%. (¶38, Complaint).

29. In connection with the February 2014 settlement, PVEC issued more than 580 million shares of its common stock to the Financing Company, which diluted PVEC's common stock by more than 11%. (¶39, Complaint).

30. In total, PVEC issued more than 2.8 billion shares of its common stock to the Financing Company in unregistered transactions. (¶40, Complaint).

31. In direct contrast to the representations made by PVEC to the state court in the December 2013 and February 2014 settlement agreements, the M&A, Vision, and Alpha debt obligations that were purchased by the Financing Company were *not* "bona fide" outstanding liabilities. Rather, PVEC fabricated the invoices underlying the M&A, Vision, and Alpha claims. (¶41, Complaint).

32. PVEC manufactured the M&A invoice from scratch, including creating a fake logo, using an incorrect address, and creating a statement of work that was completely false, (iv) neither he nor anyone from M&A worked on an inspection report for PVEC, inspected a port in Korea for PVEC, or travelled to Korea on behalf of PVEC (all of which were described as services performed on the allegedly fake invoice). (¶42, Complaint).

33. For the debt obligation purportedly owed to Vision, PVEC edited a quote received from Vision, at the time a prospective supplier to PVEC, by literally changing the word "quote" to "invoice" on a list of prices sent from Vision to Villiotis. (¶43, Complaint).

34. Similarly, the debt obligation purportedly owed to Alpha was fabricated by PVEC. (¶44, Complaint).

35. Even though the three creditors' claims referenced in herein were fake and not "bona fide," the Financing Company paid the creditors as if the claims were legitimate and real. Unbeknownst to the Financing Company, Villiotis arranged that the "creditors" would receive payment from the Financing Company, keep a small sum for themselves, and send the majority of the funds received from the Financing Company back to PVEC and Villiotis, in direct contravention of the stipulations made to the state court in the settlement agreements. (¶45, Complaint).

36. As planned and in direct contrast to representations in the settlement agreements, M&A, Vision, Alpha each utilized a portion of the funds received from the Financing Company to send money directly to PVEC and Villiotis.

   a. Within two days of receiving a $28,000 payment from the Financing Company, M&A transferred $20,000 to PVEC.

   b. Within two days of receiving a $90,000 payment from the Financing Company, Vision's principal "followed Mr. Villiotis' explicit instructions" to distribute the funds among three accounts: $40,000 to PVEC, $25,000 to a personal account of Villiotis, and $15,000 to another PVEC employee.

   c. On March 7, 2014, the Financing Company transferred $52,681 to Alpha's principal in satisfaction of the CPA and on March 12, 2014, Alpha's principal sent a check to PVEC for $45,000. (¶46, Complaint).

37. There was no registration filed or in effect as to the securities issued by PVEC to the Financing Company. (¶47, Complaint).

38. The fabrication of the claims and the undisclosed kickbacks rendered the Section 3(a)(10) exemption unavailable for the related stock issuances by PVEC to the Financing Company, causing the stock issuances to directly violate the registration requirements of the federal securities laws. (¶48, Complaint).

39. As CEO of PVEC, Villiotis directed and controlled PVEC's sale of shares to the Financing Company. (¶49, Complaint).

40. Villiotis signed the settlement agreements between PVEC and the Financing Company, he negotiated the settlement transactions on behalf of PVEC, he orchestrated the fabrication of the underlying debt obligations and the kickbacks, and he personally received kickbacks. (¶50, Complaint).

### B.     **PVEC'S Material Misrepresentations and Omissions**

41. In connection with the offering of securities during the relevant period, PVEC and Villiotis made the following material misrepresentations and omissions. (¶51, Complaint).

#### *i.     Fabricated Debt Obligations and Undisclosed Kickbacks*

42. The fabricated debt obligations and the kickbacks were fraudulent representations and/or omissions made in connection with the purchase and sale of securities. (¶52, Complaint). PVEC made representations in the settlement agreements about the "bona fide" nature of the debt obligations and the use of funds received by the creditors that were materially misleading and false. (¶53, Complaint).

43. PVEC and Villiotis knew that the M&A, Vision, and Alpha invoices were fake and contained incorrect information meant to mislead the Financing Company, the state court, and the public. (¶54, Complaint). PVEC and Villiotis also misrepresented that the creditors would not kickback any funds received from the Financing Company to PVEC or Villiotis, when, in fact, that was the plan all along. (¶55, Complaint).

#### *ii.    Misleading Press Releases*

44. At the same time PVEC was issuing billions of shares to the Financing Company, a significant portion of which was premised on fraud, PVEC issued three press releases describing its efforts to redeem or lower the amount of outstanding shares of PVEC stock. These statements were materially misleading when made because they omitted information about the issuance of billions of shares to the Financing Company. (¶56, Complaint).

45. On November 13, 2013, less than one week after entering into a §3(a)(10) settlement agreement with the Financing Company, PVEC issued a press release stating that "Peter Villiotis, CEO of PV Enterprises International would like to inform shareholders and interested parties alike as to recent corporate activities which have transpired over the past few months…Many

shareholders have corresponded with the Company expressing concern about the increases in Authorized Shares and possibility of dilution to current shareholders… Let me assure you that the Company has NO intention of diluting shareholders and is in fact initiating a share buyback of up to 340 million shares via open market transactions." (¶57, Complaint). The representations in the November 13, 2013 press release were false and misleading. Villiotis knew, at the time of this press release, that PVEC would issue hundreds of millions of unregistered shares to the Financing Company through a §3(a)(10) settlement. (¶58, Complaint).

46. The November 13, 2013 press release also stated that a qualified investment conglomerate, Evotech Capital, had purchased 1.2 billion shares of PVEC stock. This representation was false. As of November 13, 2013, Evotech had not purchased any shares of PVEC stock. (¶59, Complaint).

47. On December 11, 2013, the same day that the Financing Company purchased the debt of PVEC to consummate the December 2013 §3(a)(10) settlement, PVEC posted a letter to shareholders from its CEO onto its company website stating that PVEC is "working to redeem more than 500 million shares of stock" and "We will be filing corrective press releases to clarify and correct disclosures that were included in prior press releases. Several press releases were disseminated without our prior consent. As a result, we have terminated our relationship with our public relations firm." (¶60, Complaint). The representations were false. There had not been press releases disseminated without Villiotis' consent, PVEC never had a relationship with a public relations firm, and the incorrect disclosures referred to in the letter were in fact drafted under Villiotis' direction, approved by Villiotis, and published to the company website by Villiotis. (¶61, Complaint).

48. On January 27, 2014, PVEC issued another "Letter from the CEO" addressing the company's plans to lower the amount of outstanding shares of stock and stating, "I know you are concerned for the future of the company and especially with the increase of our authorized shares… As you're aware the corporation is challenging and proceeding to retire 1,098,686,000 shares back to the treasure." As of this date, the company had silently issued more than 1.5 billion shares to the Financing Company, making the January 27, 2014 statement materially misleading. (¶62, Complaint).

49. From November 7, 2013 through May 15, 2014, while PVEC was issuing new shares to the Financing Company, the daily closing price of PVEC common stock dropped from $.0016 to $.0003. (¶64, Complaint).

## **INJUNCTIVE AND OTHER RELIEF**

**IT IS HEREBY ORDERED**, that Defendant PVEC and its agents, servants, employees, attorneys and those persons in active concert or participation with it, who receive actual notice of this Default Judgment, by personal service, facsimile or otherwise, and each of them, by use of the mails or any means or instrumentality of interstate commerce, are permanently restrained from directly or indirectly:

(a) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, in the form or common stock or any other security, through the use or medium of any prospectus or otherwise, unless and until a registration statement is in effect with the Commission as to such securities;

(b) carrying securities, or causing them to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Commission as to such securities;

(c) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of any prospectus or otherwise, any interest in securities, in the form of common stock or any other security;

unless a registration statement is filed with the Commission as to such securities, or while a statement is filed with the Commission as to such security is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 8 of the Securities Act. [15 U.S.C. § 77h];

in violation of section 5 of the Securities Act. [15 U.S.C. § 77e].

**IT IS FURTHER ORDERED** that PVEC and its agents, servants, employees, attorneys, and all persons in active concert or participation with it who receive actual notice of this Default Judgment by personal service or otherwise are preliminarily and permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)   to employ any device, scheme, or artifice to defraud;
(b)   to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order

    to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

  Specifically, Defendant PVEC and its agents, servants, employees, attorneys, and all persons in active concert or participation with it who receive actual notice of this Default Judgment by personal service or otherwise are permanently restrained and enjoined from making any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading in any court filing as to the bona fide nature of a purported debt, or in a public filing or press release of any publicly held company, or any other statement issued by a publicly held company to the investing public, regardless of the form of the instrument used to disseminate the information to the public.

  **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant PVEC, and its agents, servants, employees, attorneys, and all persons in active concert or participation with it who receive actual notice of this Default Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a) to employ any device, scheme, or artifice to defraud;
(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

  Specifically, Defendant PVEC and its agents, servants, employees, attorneys, and all persons in active concert or participation with it who receive

actual notice of this Default Judgment by personal service or otherwise are permanently restrained and enjoined from making any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading in any court filing as to the bona fide nature of a purported debt, in a public filing or in a press release of any publicly held company, or any other statement issued by a publicly held company to the investing public, regardless of the form of the instrument used to disseminate the information to the public.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant PVEC is liable for disgorgement in the amount of $173,053.77, representing unlawful gains as a result of the conduct set forth in the Complaint, together with prejudgment interest thereon in the amount of $13,127.05. Defendant shall satisfy this obligation by paying $186,180.82 to the Securities and Exchange Commission within 30 days after entry of this Final Judgment. PVEC operated ultimately as a "pass through" of its ill-gotten gain for the benefit of its President and CEO, Defendant Villiotis. Therefore, any amount up to and including $173,053.77 that Defendant Villiotis is ordered to pay in disgorgement (and does in fact pay), should offset the amount by which PVEC is obligated to pay pursuant to this judgment.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

    Enterprise Services Center
    Accounts Receivable Branch
    6500 South MacArthur Boulevard
    Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; PV Enterprises, Inc. as a defendant in this action; and specifying that payment is made pursuant to this Default Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action to Edward G. Sullivan, Esq., Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326.  By making this payment, Defendant PVEC relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant.  The Commission shall send the funds paid pursuant to this Default Judgment to the United States Treasury.  Defendant shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant PVEC shall pay a civil penalty in the amount of $250,000.00 pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].  Defendant PVEC shall make this payment within thirty (30) business days after entry of this Default Judgment.  Defendant PVEC may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request.  Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm.  Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; PV Enterprises, Inc. as a defendant in this action; and specifying that payment is made pursuant to this Default Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action to Edward G. Sullivan, Esq., Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326.  By making this payment, Defendant PVEC relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant.

The Commission shall send the funds paid pursuant to this Default Judgment to the United States Treasury.  Defendant PVEC shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, there being no just reason for delay, the Clerk is directed to enter this judgment against Defendant PVEC forthwith.   This Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment

**Done and Ordered**, at Miami, Florida, on December 14, 2016.

_____
Robert N. Scola, Jr.
United States District Judge