United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Securities and Exchange Commission, Plaintiff <br> v. <br> PV Enterprises, Inc., and others, Defendants. | ) <br> ) <br> ) <br> ) Civil Action No. 16-20542-Civ-Scola <br> ) |

## Default Judgment Against Defendant Sweet Challenge, LLC

The Securities and Exchange Commission filed its Complaint against Defendant Sweet Challenge, LLC (a/k/a Sweet Challenge, Inc.) ("Sweet Challenge") on February 16, 2016. The SEC served defendant Sweet Challenge on its registered agent, and entity's answer or responsive pleading was due March 11, 2016. Sweet Challenge through its then counsel Robert Eckard, Esq. filed a motion to dismiss. On June 28, 2016, the Court issued its *Order Denying Motions to Dismiss,* including that filed by Defendant Sweet Challenge [Docket No. 41]. Later on July 5, 2016, the Court issued its *Corrected Order on Motion to Withdraw,* which permitted Mr. Eckard to withdraw as counsel for Defendants Sweet Challenge and Birmingham [Docket No. 45]. In that order, the Court ruled that because a corporation may not litigate a matter *pro se,* Sweet Challenge was ordered to retain new counsel on or before July 29, 2016, and that failure of successor counsel to appear by that day would likely result in the Court holding the corporate defendant Sweet Challenge in default. To date, no counsel has made an entry of appearance for Sweet Challenge, and no answer has been filed on behalf of Sweet Challenge. On August 2, 2016, the SEC moved this Court for entry of default against Sweet Challenge [Docket No. 52]. On August 3, 2016, the Clerk's entry of default was entered against Sweet Challenge. [Docket No. 53]. The SEC has now moved the Court for a default judgment against Sweet Challenge.

"A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," as set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Almeira v. GB House, LLC*, No. 14–cv–00045, 2014 WL 1366808, at *1 (M.D. Fla. Apr. 7, 2014) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)). An evidentiary

hearing on damages is unnecessary as long as "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *see also S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005).

The Court hereby **grants** the SEC's motion (ECF No. 56) and sets forth relevant findings of fact and conclusions of law below, in addition to injunctive relief, and the imposition of disgorgement, prejudgment interest, and civil penalty, as appropriate.

## FINDINGS AND CONCLUSIONS

The Declaration of Matthew F. McNamara, provided by the Commission establishes that from the Commission's investigation, disgorgement and prejudgment interest in specific amounts are appropriate based upon the knowledge of the declarant (McNamara Declaration, ¶3-4). Given the failure of defendant Sweet Challenge to answer, the following allegations of the SEC's Complaint are now deemed to be true (as to Sweet Challenge only) and are made the findings of this Court:

### Findings of Fact

1. The Commission brought this action against Virtual, Norman Birmingham ("Birmingham"), Mario Faraone ("Faraone"), and Sweet Challenge, LLC a/k/a Sweet Challenge, Inc. ("Sweet Challenge") for violations of the registration provisions of the federal securities laws. (¶2, Complaint).

2. Virtual entered into business transactions with a specific financing company ("Financing Company") which resulted in the companies issuing millions of shares of the company's stock to the Financing Company in violation of the registration provisions of the federal securities laws. (¶3, Complaint).

3. Section 5 of the Securities Act of 1933 ("Securities Act") prohibits the sale of securities unless the securities are registered with the Commission or are exempt from registration. (¶4, Complaint).

4. The stock that Virtual sold to the Financing Company was not registered with the Commission; rather, the company attempted to rely on an exemption found in Section 3(a)(10) of the Securities Act. In relevant part, Section 3(a)(10) exempts securities issued in court-approved exchanges for "bona fide outstanding securities, claims, or property interests." (¶5, Complaint).

5. To avoid registration, Virtual sold outstanding debt liabilities to Financing Company; the Financing Company then sued Virtual in a Florida state court for defaulting on its obligations, and the parties settled the action by requesting the state court allow Virtual to pay the creditor in company shares that would be exempt from registration pursuant to Section 3(a)(10). (¶6, Complaint).

6. In seeking the Florida state court's approval, Virtual made material misstatements and withheld significant information, thereby rendering the Section 3(a)(10) exemption unavailable for any related stock issuances to the Financing Company. (¶7, Complaint).

7. In pursuit of receiving settlement approval from the court to issue shares to the Financing Company, Virtual misrepresented that it and its creditor, Sweet Challenge, were not under the common control of Birmingham, and also misrepresented that funds received by Sweet Challenge would not be kicked back to Virtual and Virtual employees, including Faraone. (¶9, Complaint).

8. The omissions and misrepresentations by Virtual rendered the Section 3(a)(10) exemption unavailable for the related stock issuances to the Financing Company and, as a result, the unregistered distributions of those securities to the Financing Company violated Section 5 of the Securities Act. (¶10, Complaint).

9. As a result of the conduct described in this Complaint, Virtual, Birmingham, Sweet Challenge, and Faraone violated Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c). (¶13, Complaint).

10. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 20(e), 20(g), and 2(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), 77t(e), 77t(g), and 77v(a); and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 20(e), 20(g), and 2(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), 77t(e), 77t(g), and 77v(a); and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa. (¶14, Complaint).

11. This Court has personal jurisdiction and venue is proper in this district because many of the Defendants' acts constituting violations of the Securities Act and the Exchange Act occurred in the district. The Defendants offered and sold unregistered securities to the Miami based Financing Company, and money received by each of the Defendants, in the form of either direct payments from the Financing Company or kickbacks from the creditors, originated from the Financing Company in Miami Beach. Villiotis resides in this

district, and PVEC, Villiotis, and the Financing Company conduct business from this district. (¶15, Complaint).

12. In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails. (¶16, Complaint).

13. **Virtual** is a Nevada corporation with its principal place of business in Independence, Kansas that purports to acquire companies and develop products in the waste management market. (¶19, Complaint).

14. **Birmingham** is a resident of Columbia, Maryland. At all times relevant, Birmingham was in control of and managed the day-to-day operations of Virtual and Sweet Challenge. From March 2012 until June 2013, Birmingham served as President and Director of Virtual. On June 4, 2013, Birmingham publicly resigned from all positions held with Virtual; however, Birmingham remained intimately involved in the company, including but not limited to appointing putative officers and directors and, at all relevant times, exercising sole control over Virtual's telephones, email accounts, and bank accounts. (¶20, Complaint).

15. **Faraone** is a resident of Rock Hill, South Carolina. Faraone has been the purported President and a Director of Virtual since December 31, 2013. From June 12, 2007 to June 1, 2014, however, Faraone worked full time as a collections agent for Citi, and Faraone did not have access to Virtual's email account or bank account until December 2014. (¶21, Complaint).

16. **Sweet Challenge** is a Michigan corporation with its principal place of business in Columbia, Maryland that purports to provide accounting and auditing services to Virtual Sourcing and other microcap companies. Norman Birmingham is the listed registered agent for the company's charter. (¶22, Complaint).

17. **Financing Company**, a Nevada limited liability company with its principal place of business in Miami Beach, Florida, holds itself out as a financial services company. Since June 2013, Financing Company's business involves making investments for its own account through settlement transactions with microcap stock companies in purported reliance on the registration exemption contained in Section 3(a)(10) of the Securities Act. (¶23, Complaint).

### A.   Virtual's Issuance of Unregistered Shares

18. At all times relevant, Virtual was purportedly in the business of acquiring companies and developing products in the waste management

market. Its common stock was publicly traded on an "over the counter" market (aka the "pink sheets") under the symbol PGCX. (¶65, Complaint).

19. At all times relevant, Birmingham was in control of and managed the day-to-day operations of Virtual. (¶66, Complaint).

20. From March 2012 until June 2013, Birmingham served as President and Director of Virtual. On June 4, 2013, Birmingham publicly resigned from all positions held with Virtual; however, Birmingham remained intimately involved in the company, including but not limited to appointing putative officers and directors and, at all relevant times, operating sole control over Virtual's telephones, email accounts, and bank accounts. (¶67, Complaint).

21. Sweet Challenge purported to provide accounting and auditing services to Virtual. At all times relevant, Birmingham was the listed registered agent for Sweet Challenge's charter. (¶68, Complaint).

22. In March 2013, Sweet Challenge purportedly entered into an agreement to provide consulting services to Allied Recycling Corp. ("Allied"), a subsidiary of Virtual. The consulting agreement stipulated that Sweet Challenge would provide six services to Allied in exchange for $12,500 per month "to be paid at the discretion of [Allied] in free restricted (sic) trading shares or cash or a combination of both." The scope of services to be provided by Sweet Challenge included (1) "providing personnel for accounting, compliance, and tax filings…the operation of [Allied] until properly staffed will be the responsibility of Consultant;" (2) assist in locating profession parties to form advisory boards; (3) review all regulatory filings; (4) identify and present to [Allied] board parties who meet a predefined model for financing; (5) provide all record keeping; (6) report directly to Board and supply advice and expertise. (¶69, Complaint).

23. In or around February 2014, Birmingham represented Virtual in negotiating a Section 3(a)(10) settlement transaction between Virtual and the Financing Company. Birmingham, and Birmingham alone, represented Virtual in an introductory phone call with the Financing Company to discuss the prospective transaction, and Birmingham unilaterally communicated with the Financing Company, on behalf of Virtual, in setting up the paperwork for the transaction. (¶70, Complaint).

24. On February 26 and 27, 2014, the Financing Company executed Claim Purchase Agreements with two Virtual creditors through which the Financing Company agreed to purchase outstanding debt obligations owed by Virtual totaling $178,500, including $162,500 owed to Sweet Challenge as a result of unpaid fees associated with the consulting agreement. (¶71, Complaint).

25. On February 27, 2014, and as agreed beforehand by the Financing Company and Birmingham, the Financing Company filed a state court complaint against Virtual in Sarasota County alleging that Virtual defaulted on its obligations to Sweet Challenge and the other creditor and that Virtual is responsible and liable for the debts acquired by the Financing Company. (¶72, Complaint).

26. Simultaneous to the filing of the complaint, Virtual and the Financing Company submitted a proposed settlement agreement to the state court. The proposed settlement agreement stipulated that Virtual would issue the Financing Company current and future shares of its common stock as a substitute for repayment of the past due liabilities owed by Virtual to the Financing Company. (¶73, Complaint).

27. The proposed settlement agreement notified the state court of the parties' reliance on Section 3(a)(10) of the Securities Act, contained a provision prohibiting Sweet Challenge from passing the proceeds received from the Financing Company back to Virtual, and explicitly stipulated that Sweet Challenge was not and within the past 90 days had not been under common control with Virtual. (¶74, Complaint).

28. The settlement agreement stated the following:

   a. Sweet Challenge "was not and within the past ninety days has not been directly or indirectly through one or more intermediaries in control, controlled by, or under common control, with [Virtual Sourcing] and is not an affiliate of [Virtual Sourcing] as defined in Rule 144," and

   b. "To the best of [Virtual Sourcing]'s knowledge, [Sweet Challenge] is not, directly or indirectly, utilizing any of the proceeds received from IBC for selling the Claims to provide any consideration to or invest in any manner in [Virtual Sourcing] or any affiliate of [Virtual Sourcing]." (¶75, Complaint).

29. The proposed settlement was approved by the state court, after which Virtual began issuing shares of its common stock to the Financing Company pursuant to the settlement agreement. (¶76, Complaint).

30. In connection with the February 2014 settlement, Virtual issued more than 88 million shares of its common stock to the Financing Company. At the time of entering into the February 2014 settlement agreement, Virtual had 93.89 million shares of common stock outstanding. Therefore, the more than 80 million shares issued to the Financing Company diluted Virtual's common stock by more than 85 percent. (¶77, Complaint).

31. In direct contrast to the representations made by Virtual to the state court in the February 2014 settlement, both Sweet Challenge and Virtual were under the common control of Birmingham, and Sweet Challenge utilized

proceeds received from the Financing Company to provide consideration to Virtual. (¶78, Complaint).

### i. Birmingham's Control Over Both Sweet Challenge and Virtual

32. Birmingham, at all times relevant, controlled Sweet Challenge. (¶79, Complaint).

33. Birmingham unilaterally performed all the Sweet Challenge work and had sole signature authority for Sweet Challenge's bank account. (¶80, Complaint). Birmingham, at all times relevant, also controlled Virtual. (¶81, Complaint).

34. Birmingham ran the day to day operations for Virtual. Birmingham exercised unilateral control over Virtual's bank account and email account, answered phone calls placed to Virtual, attended Virtual board meetings, nominated individuals as members of Virtual's board, unilaterally sought out investments for Virtual, drafted and posted press releases for Virtual, and through his company Sweet Challenge, even paid the salary of Virtual employees as well as Virtual legal and administrative expenses and auditor fees. (¶82, Complaint).

35. Virtual currently maintains its official place of business at the residential apartment of Adam Birmingham, Birmingham's son. As of January 2015, all the corporate records for Virtual were located at Birmingham's residence in Maryland. (¶83, Complaint).

36. In June 2013, Birmingham appointed Faraone as the purported President of Virtual. However, as of June 1, 2013 and continuing through June 1, 2014, Faraone had a full time job with Citi as a mortgage collector, and Faraone did not perform any operational duties as President of Virtual aside from signing the settlement agreement on behalf of Virtual that enabled Virtual to the Finance Company pursuant to Section 3(a)(10). Faraone signed the agreement under Birmingham's instruction and also attended board phone calls set up and attended by Birmingham. (¶84, Complaint).

--Despite his purported role as president of Virtual, Faraone had no control over or access to Virtual's bank accounts. He could not draft checks or withdraw funds. (¶85, Complaint).

### ii. Sweet Challenge's Kickbacks to Virtual

37. In direct contrast to the representation to the state court in the settlement agreement, Sweet Challenge utilized a portion of the funds received from the Financing Company to send money directly to Virtual and Faraone. (¶86, Complaint).

38. On March 13, 2014, Sweet Challenge received a wire transfer from the Financing Company for $81,250. (¶87, Complaint).

39. On March 14, 2014, Sweet Challenge transferred $1,000 into the bank account of Mario Faraone, wrote Virtual a check for $5,000, and paid $1,000 to a law firm for a legal opinion letter for Virtual. (¶88, Complaint).

40. Sweet Challenge also wrote checks to Virtual for $1,600 on March 31, 2014, for $5,000 on April 24, 2014, and for $3,400 on June 12, 2014. (¶89, Complaint).

41. In September and October of 2014, Sweet Challenge made a total of $10,000 in payments to Virtual's auditor. (¶90, Complaint).

42. In December 2014, Virtual entered into a second Section 3(a)(10) settlement transaction with the Financing Company to settle an additional debt purportedly owed to Sweet Challenge. The parties filed settlement documents with the same state court outlining terms analogous to the February 2014 settlement agreement. (¶91, Complaint).

43. In connection with the December 2014 settlement, Virtual issued more than 63 million shares of its common stock to the Financing Company. At the time of entering into the December 2014 settlement agreement, Virtual had 180 million shares of common stock outstanding. Therefore, the more than 63 million shares issued to the Financing Company diluted Virtual's common stock by approximately 35 percent. (¶92, Complaint).

44. There was no registration filed or in effect as to the securities issued by Virtual to the Financing Company. (¶93, Complaint).

45. The omissions and misrepresentations concerning common control and use of funds rendered the Section 3(a)(10) exemption unavailable for the related stock issuances by Virtual to the Financing Company, causing the stock issuances to directly violate the registration requirements of the federal securities laws. (¶94, Complaint).

46. Sweet Challenge sold the debt obligations to the Financing Company that formed the basis of the Section 3(a)(10) settlement transactions, and Sweet Challenge misrepresented that it was not affiliated with Virtual, that it and Virtual were not under the common control of Birmingham, and that it would not kickback funds received from the Financing Company to Virtual. (¶95, Complaint).

47. Birmingham controlled both Virtual and Sweet Challenge, orchestrated the 3(a)(10) settlement transactions on Virtual's behalf, communicated with the Financing Company concerning the transactions, instructed Faraone to sign the settlement agreements, and directed a portion of the proceeds received by Sweet Challenge back to Virtual. (¶96, Complaint).

48. Faraone signed the settlement agreements on behalf of Virtual and concealed Birmingham's common control over both Virtual and Sweet Challenge. (¶97, Complaint).

## INJUNCTIVE AND OTHER RELIEF

**IT IS HEREBY ORDERED**, **ADJUDGED AND DECREED** that Defendant Sweet Challenge and its agents, servants, employees, attorneys and those persons in active concert or participation with it, who receive actual notice of this Default Judgment, by personal service, facsimile or otherwise, and each of them, by use of the mails or any means or instrumentality of interstate commerce, are permanently restrained from directly or indirectly:

(a) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, in the form or common stock or any other security, through the use or medium of any prospectus or otherwise, unless and until a registration statement is in effect with the Commission as to such securities;

(b) carrying securities, or causing them to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Commission as to such securities;

(c) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of any prospectus or otherwise, any interest in securities, in the form of common stock or any other security;

unless a registration statement is filed with the Commission as to such securities, or while a statement is filed with the Commission as to such security is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 8 of the Securities Act. [15 U.S.C. 77h];in violation of section 5 of the Securities Act. [15 U.S.C. 77e].

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant Sweet Challenge is liable for disgorgement in the amount of $225,000, representing unlawful gains (in the form of debt satisfaction) as a result of its conduct set forth in the Complaint, together with prejudgment interest thereon in the amount of $11,078.85. Defendant shall satisfy this obligation by paying $236,078.85 to the Securities and Exchange Commission within 30 days after entry of this Final Judgment. Sweet Challenge operated ultimately as a "pass through" of its ill-gotten gain for the benefit of its controlling director and registered agent, Defendant Birmingham. Therefore, any amount up to and including $225,000 that Defendant Birmingham is

ordered to pay in disgorgement (and does in fact pay), should offset the amount by which Sweet Challenge is obligated to pay pursuant to this judgment.

Defendant Sweet Challenge may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Sweet Challenge, LLC as a defendant in this action; and specifying that payment is made pursuant to this Default Judgment.

Defendant Sweet Challenge shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action to Edward G. Sullivan, Esq., Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326. By making this payment, Defendant Sweet Challenge relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant. The Commission shall send the funds paid pursuant to this Default Judgment to the United States Treasury. Defendant shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant Sweet Challenge shall pay a civil penalty in the amount of $25,000.00 pursuant to Sections 20(d) of the Securities Act [15 U.S.C. 77t(d)]. Defendant Sweet Challenge shall make this payment within thirty (30) business days after entry of this Default Judgment. Defendant Sweet Challenge may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money

order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

>Enterprise Services Center
>Accounts Receivable Branch
>6500 South MacArthur Boulevard
>Oklahoma City, OK 73169

 and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Sweet Challenge, LLC as a defendant in this action; and specifying that payment is made pursuant to this Default Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action to Edward G. Sullivan, Esq., Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326. By making this payment, Defendant Sweet Challenge relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant. The Commission shall send the funds paid pursuant to this Default Judgment to the United States Treasury. Defendant Sweet Challenge shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, there being no just reason for delay, the Clerk is directed to enter this judgment against defendant Sweet Challenge forthwith. This Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment

**Done and Ordered**, at Miami, Florida, on December 15, 2016.

_____
Robert N. Scola, Jr.
United States District Judge